# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER SYMMS, | ) | |
| | ) | Civil Action No. 15 – 1384 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| SUPERINTENDENT TREVOR | ) | |
| WINGARD and THE ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| PENNSYLVANIA, | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION

Before the Court is a Petition for Writ of Habeas Corpus ("Petition") filed by Petitioner

Christopher Symms ("Petitioner") pursuant to 28 U.S.C. § 2254, as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). (ECF No. 1.) He is

challenging his judgment of sentence of fifteen (15) to thirty (30) years imprisonment after he

was convicted in a bench trial of third-degree murder and other related crimes on September 18,

2006.

A. **Factual History**

The Pennsylvania Superior Court set forth the following recitation of facts in its

Memorandum dated July 10, 2008.

> . . . . Tiffany Harper testified she was walking down the street when she heard
> gunshots coming from across the street, approximately 80 to 100 feet away. She
> looked to see one man lying on the ground, and another standing over him.
> Harper also noted a third man standing two to three feet away. She did not see a
> gun or gunfire, but heard two more shots and observed the body on the ground

jerk with each shot fired. She could not determine who the shooter was. Harper testified that the man standing over the man lying on the ground was wearing a black coat with emblazoned sports team emblems.

Brandon Ford, appellant's friend and the victim of a gunshot fired from the same gun used to shoot the decedent, testified, often in incoherent fashion, that on the afternoon of the shooting, while he and appellant were walking to the market, appellant, who wore a brown or tan coat, explained that he had been involved in an argument with some men the day before, and he was afraid he might encounter them again. According to Ford's testimony, as they approached the market, appellant became "panicked" because he saw the persons from the prior day crossing the street toward them. An argument about "turf" ensued between appellant and the victim, supported by a "big crowd," and Ford stated he tried to get appellant to just walk away. Appellant and the victim eventually came to blows, and Ford testified that he tried unsuccessfully to separate them. Despite Ford's testimony that he had not seen any guns that day, Ford was shot. When he was unable to get help from the aid station to which he had run, and after hearing two more gunshots, Ford testified that he ran back toward the scene, and saw appellant, without his coat, running in the opposite direction. Appellant told Ford, "I'm sorry" and "my fault." Further, on cross-examination, defense counsel had Ford read from previously sworn testimony from the coroner's inquest at which time Ford testified that appellant had told him, "I'm sorry for shooting you. I swear to God I didn't mean to shoot you."

One of the responding officers, Larry Langham, testified that upon his arrival at the scene, he saw a brown coat hanging from a fence, and saw a black handgun, which turned out to be the murder weapon, lying on the ground next to the decedent. Homicide Detective Thomas DeFelice testified that when he inspected the brown coat, he noted a hole and powder burns in the left pocket, baggies of marijuana which were found to bear appellant's fingerprints, and a shell casing from a nine-millimeter handgun. When electrical tape was removed from the handle of the murder weapon, a latent print matching the appellant's was found. Appellant's DNA was likewise found on the coat and handgun. It ultimately was determined that the bullet causing the victim's death was fired from this same handgun.

Appellant chose to testify on his own behalf and stated that on the afternoon of the shooting, while walking to a friend's house, he encountered Ford and the two men decided to walk together. As they walked, appellant testified that he then saw three men, including the victim Davidson and another man, Darien Cunningham, known as "Patchead," sitting on the steps of an abandoned house across the street, and became concerned because he and Patchead had had a verbal altercation that day. At that time, Patchead had advised appellant to mind his own business, and a companion of Patchead's had brandished a handgun in appellant's direction with Patchead stating "he'd be right back." Appellant

explained that he was carrying a handgun on the day of the shooting because he feared for his life as a consequence of this prior confrontation, and because he believed that the men were associated with a known, violent gang. Appellant testified that the three men crossed the street and confronted him, asking him why he was in "their neighborhood." According to appellant's testimony, the six-foot-seven victim shoved him into a fence. Appellant stated that he heard a gun fire, and so reached into his coat pocket and fired his handgun one time, without aiming. He heard his friend Ford say, "I'm hit." Davidson then reached into appellant's pocket and demanded his gun. "I pulled the trigger again[,]" once again through the coat pocket. Appellant stated he did not realize the victim had been struck, as he continued to struggle for control of the handgun. Appellant's gun fired again, and then twice more. The victim ultimately fell to the ground, and when appellant tried to flee, he realized his coat was snagged on the fence requiring him to slide his arms out of the coat in order to leave the scene.

(Resp't Ex. 6, Memorandum, 7/10/08, pp.5-8; ECF No. 7-3, pp.5-8) (internal citations to the record omitted).

## B.  **Procedural History**

A Criminal Information filed at CP-02-CR-0003182-2005 charged Petitioner with one count of Criminal Homicide, for the shooting death of Darryl Davidson. (Resp't Ex. 1, Docket Sheet; ECF No. 7-1, pp.1-14.) In another Criminal Information filed at CP-02-CR-005435-2005, Petitioner was charged with two counts of Aggravated Assault[1] and one count each of Carrying a Firearm Without a License, Possession with the Intent to Deliver a Controlled Substance, Possession of a Controlled Substance, and Recklessly Endangering Another Person (REAP). (Resp't Ex. 2, Docket Sheet; ECF No. 7-1, pp.15-27.)

On September 13, 2006, Petitioner waived his right to a trial by jury and proceeded to a bench trial before the Honorable Kevin G. Sasinoski. On September 18, 2006, the trial court found Petitioner guilty of third-degree murder and the other remaining counts at CP-02-CR-0005435-2005. On December 13, 2006, the trial court imposed a sentence of fifteen (15) to

---

[1] Prior to trial, the Commonwealth withdrew one of the Aggravated Assault charges.

thirty (30) years' incarceration at the third-degree murder count, as well as a concurrent five (5) to ten (10) years' incarceration at the aggravated assault count and a concurrent two-and-a-half (2½) to five (5) years' incarceration at the possession with intent to deliver count. No further penalty was imposed at the remaining counts. On December 20, 2006, Petitioner, through his attorney, filed a Petition Requesting Reconsideration of Sentence, which was denied on December 21, 2006. Through new counsel, Petitioner filed post-sentence motions on March 27, 2007, which were denied on April 25, 2007. *See* Resp't Exs. 1 & 2, *supra*.

Petitioner appealed and the trial court issued its Pa. R.A.P. 1925(a) Opinion on December 31, 2007. (Resp't Ex. 7, Opinion; ECF No. 7-2, pp.1-9.) His judgement of sentence was affirmed by the Pennsylvania Superior Court in a Memorandum dated July 10, 2008. (Resp't Ex. 3, Docket Sheet; ECF No. 7-1, pp.28-31); (Resp't Ex. 5, Brief for Appellant; ECF No. 7-2, pp.10-58); (Resp't Ex. 6, Memorandum, 7/10/08; ECF No. 7-3, pp.1-14.) Petitioner filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court, which was denied on December 23, 2008. (Resp't Ex. 7, Docket Sheet; ECF No. 7-3, pp.15-17.)

Petitioner filed a *pro se* Petition pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA") on March 3, 2009, but he did not raise any issues in this Petition. He filed an amended *pro se* PCRA Petition on December 4, 2009, wherein he identified three issues. (Resp't Ex. 8, PCRA Petition; ECF No. 7-3, pp.18-26.) Petitioner was appointed counsel to represent him in his PCRA proceedings but two attorneys had to withdraw due to various conflicts. Thereafter, the PCRA court appointed David A. Hoffman, Esquire, who filed a Motion to Withdraw as Counsel and a *Turner*/*Finley* No Merit Brief on June 15, 2012. (Resp't Ex. 10, Motion for Leave to Withdraw as Counsel under *Turner* and *Finley* and Brief in Support of Motion for Leave to Withdraw; ECF No. 7-4, pp.1-23.) The PCRA court issued an Order dated

September 19, 2012, granting counsel leave to withdraw and directing Petitioner to notify the court of his intention to either proceed *pro se*, retain private counsel or withdraw his petition and file any supplemental petition within forty-five days. (Resp't Ex. 11, Order of Court; ECF No. 7-4, p.24.) Petitioner filed a *pro se* Response to the Court's Order granting counsel leave to withdraw wherein he raised several complaints about Attorney Hoffman's representation, including issues he claimed Attorney Hoffman failed to address. (Resp't Ex. 12, Response; ECF No. 7-4, pp.25-43.) The PCRA court dismissed the PCRA Petition without a hearing on December 20, 2012, and Petitioner appealed. (Resp't Ex. 13, Docket Sheet; ECF No. 7-4, pp.44-47); (Resp't Ex. 15, Brief for Appellant; ECF No. 7-5, pp.1-45.) The PCRA court issued its Opinion pursuant to Pa. R.A.P. 1925(a) on December 16, 2013. (Rersp't Ex. 14, Opinion; ECF No. 7-4, pp.49-52.) The Superior Court affirmed the dismissal of Petitioner's PCRA Petition in a Memorandum dated January 29, 2015. (Resp't Ex. 16, Memorandum 1/29/15; ECF No. 7-5, pp.46-53.) Petitioner filed a Petition for Allowance of Appeal, that the Pennsylvania Supreme Court denied on June 10, 2015. (Resp't Ex. 17, Docket Sheet; ECF No. 7-5, pp.54-56.)

The Petition in the above-captioned case was docketed on October 26, 2015. (ECF No. 1.) Respondents filed their Answer to the Petition on December 28, 2015. (ECF No. 7.)

**C.    Applicable Standards**

**1.    28 U.S.C. § 2254(d)**

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court may overturn a state court's resolution of the merits of a constitutional issue only if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28

U.S.C. § 2254(d)(1).  The Supreme Court of the United States, in <u>Williams v. Taylor</u>, 529 U.S.

362 (2000), discussed the analysis required by § 2254(d)(1):

> [Under the "contrary to" clause], a federal habeas court may grant the writ if the
> state court arrives at a conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case differently than this Court has
> on a set of materially indistinguishable facts.  Under the "unreasonable
> application" clause, a federal habeas court may grant the writ if the state court
> identifies the correct governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

<u>Id</u>. at 1498.  The Third Circuit Court of Appeals, consistent with the <u>Williams v. Taylor</u>

interpretation, set forth in <u>Matteo v. Superintendent, SCI-Albion</u>, 171 F.3d 877 (3d Cir. 1999),

*cert*. *denied* 528 U.S. 824 (1999), a two-tier approach to reviewing § 2254(d)(1) issues:

> First, the federal habeas court must determine whether the state court decision
> was "contrary to" Supreme Court precedent that governs the petitioner's claim.
> Relief is appropriate only if the petitioner shows that "Supreme Court precedent
> requires an outcome contrary to that reached by the relevant state court."  <u>O'Brien</u>
> <u>[v. Dubois]</u>, 145 F.3d [16], 24-25 [1st Cir. 1998)].  In the absence of such a
> showing, the federal habeas court must ask whether the state court decision
> represents an "unreasonable application" of Supreme Court precedent; that is,
> whether the state court decision, evaluated objectively and on the merits, resulted
> in an outcome that cannot reasonably be justified.  If so, then the petition should
> be granted.

<u>Id</u>. at 891.  The phrase "clearly established Federal law," as the term is used in Section

2254(d)(1) is restricted "to the holdings, as opposed to the dicta of [the United States Supreme

Court] decisions as of the time of the relevant state-court decision."  <u>Williams</u>, 529 U.S. at 365.

Under the "unreasonable application" clause,

> a federal habeas court may not grant relief simply because that court concludes in
> its independent judgment that the relevant state-court decision applied clearly
> established federal law erroneously or incorrectly.  Rather, that application must
> also be unreasonable.

<u>Id</u>.  If a petitioner is able to satisfy the requirements of § 2254(d)(1), then the state court decision

is not entitled to deference under AEDPA and the federal habeas court proceeds to a *de novo*

evaluation of the constitutional claim on the merits.  *See* <u>Tucker v. Superintendent Graterford SCI</u>, 677 F. App'x 768, 776 (3d Cir. 2017) (citing <u>Panetti v. Quarterman</u>, 551 U.S. 930, 953 (2007) ("When . . . the requirement set forth in § 2254(d)(1) is satisfied[,] [a] federal court must then resolve the claim without the deference AEDPA otherwise requires.").  Indeed, the Third Circuit recently explained that,

> [w]hile a determination that a state court's analysis is contrary to or an unreasonable application of clearly established federal law is necessary to grant habeas relief, it is not alone sufficient.  That is because, despite applying an improper analysis, the state court still may have reached the correct result, and a federal court can only grant the Great Writ if it is "firmly convinced that a federal constitutional right has been violated," <u>Williams</u>, 529 U.S. at 389, 120 S.Ct. 1495. *See also* <u>Horn v. Banks</u>, 536 U.S. 266, 272, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002) ("[w]hile it is of course a necessary prerequisite to federal habeas relief that a prisoner satisfy the AEDPA standard of review . . . none of our post-AEDPA cases have suggested that a writ of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard").  Thus, when a federal court reviewing a habeas petition concludes that the state court analyzed the petitioner's claim in a manner that contravenes clearly established federal law, it then must proceed to review the merits of the claim de novo to evaluate if a constitutional violation occurred.  *See* <u>Lafler v. Cooper</u>, 566 U.S. 156, 174, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012).

<u>Vickers v. Superintendent Graterford SCI</u>, 858 F.3d 841, 848-89 (3d Cir. 2017) (internal footnote omitted).

The AEDPA further provides for relief if an adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Under § 2254(d)(2), a state court decision is based on an "unreasonable determination of the facts" if the state court's factual findings are "objectively unreasonable in light of the evidence presented in the state-court proceeding," which requires review of whether there was sufficient evidence to support the state court's factual findings.  *See* <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).  Within this overarching

standard, a petitioner may attack specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision. Here, § 2254(e)(1) comes into play, instructing that the state court's determination must be afforded a presumption of correctness that the petitioner can rebut only by clear and convincing evidence. Lambert v. Blackwell, 387 F.3d 210, 235 (3d Cir. 2004).

### 2. Exhaustion and Procedural Default

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. Specifically, a federal habeas court may not grant a state prisoner's petition for writ of habeas corpus unless he has first presented his federal constitutional claims to the state courts. 28 U.S.C. § 2254(b)(1)(A). This is called the "exhaustion" requirement and it is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991). *See also* O'Sullivan v. Boerckel, 526 U.S. 838, 842-49 (1999). In order to exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 844-45. In Pennsylvania, this requirement means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition to the Superior Court either on direct or PCRA appeal. *See*, *e.g.*, Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).

"If a claim has not been fairly presented to the state courts but state law clearly forecloses review, *see* Lovasz v. Vaughn, 134 F.3d 146, 148 (3d Cir. 1998), 28 U.S.C. § 2254(b)(1)(B)(i), exhaustion is excused, *see*, *e.g.*, Lambert [v. Blackwell], 134 F.3d [506] at 513, 517-19 [(3d Cir.

1997)]; <u>Doctor v. Walters</u>, 96 F.3d 675, 681 (3d Cir. 1996), but the doctrine of procedural default may come into play." <u>Carpenter v. Vaughn</u>, 296 F.3d 138, 146 (3d Cir. 2002). Under the procedural default doctrine, a federal court may be precluded from reviewing claims in certain situations. *See* <u>Gray v. Netherland</u>, 518 U.S. 152, 162 (1996) (The procedural default doctrine prohibits federal habeas courts from reviewing a state court decision involving a federal question if the state court decision is based on a rule of state law that is independent of the federal question and adequate to support the judgment); <u>Coleman v. Thompson</u>, 501 U.S. 730, 732 (1991) (If a petitioner has failed to properly exhaust a claim – for example, he failed to comply with a state procedural rule, and as a result the state court declined to adjudicate the claim on the merits, the claim is defaulted in federal habeas corpus under the procedural default doctrine.).

As the United States Court of Appeals for the Third Circuit explained in <u>Rolan v. Coleman</u>, 680 F.3d 317 (3d Cir. 2012):

> Procedural default occurs when a claim has not been fairly presented to the state courts (i.e., is unexhausted) and there are no additional state remedies available to pursue, *see* <u>Wenger v. Frank</u>, 266 F.3d 218, 223-24 (3d Cir. 2001); or when an issue is properly asserted in the state system but not addressed on the merits because of an independent and adequate state procedural rule, *see* <u>McCandless v. Vaughn</u>, 172 F.3d 255, 260 (3d Cir. 1999).

<u>Rolan</u>, 680 F.3d at 317.

A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either: 1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a "fundamental miscarriage of justice." <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000); <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991). To satisfy the cause standard, a petitioner must

demonstrate that some objective factor external to the defense impeded his or her efforts to raise the claim in state court.  McCleskey v. Zant, 499 U.S. 467, 493 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986).  To show prejudice, a petitioner must demonstrate that the error worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions, not merely that the error created a "possibility of prejudice."  Carrier, 477 U.S. at 494; United States v. Frady, 456 U.S. 152, 170 (1982).  Where a petitioner cannot make a showing of "cause and prejudice," a federal court may nevertheless consider the merits of his or her unexhausted claims under circumstances in which the failure to adjudicate such claims would result in a "fundamental miscarriage of justice."  Coleman, 501 U.S. at 750.  The "prototypical example" of a miscarriage of justice is a situation in which an underlying constitutional violation has led to the conviction of an innocent defendant.  Sawyer v. Whitley, 505 U.S. 333, 340 (1992).  In that instance, the merits of a petitioner's claims can be considered notwithstanding his or her failure to raise them before the state courts.  In order to avail himself or herself of this exception to the procedural default rule, a petitioner must make a substantial showing that he or she is actually innocent of the crime for which he or she is incarcerated.  Schlup v. Delo, 513 U.S. 298, 324 (1995).  This exception to the procedural default doctrine is based on the principle that, in certain circumstances, "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'"  Carrier, 477 U.S. at 495 (quoting Engle v. Isaac, 456 U.S. 107, 135 (1982)).

Finally, in Martinez v. Ryan, 132 S. Ct. 1309 (2012), the United States Supreme Court recognized a narrow equitable exception to the doctrine of procedural default:  "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  This exception is available to a

petitioner who can show that: (1) his procedurally defaulted ineffective assistance of trial counsel claim has "some merit," id. at 1318-19 (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)); and that (2) his state-post conviction counsel was "ineffective under the standards of Strickland v. Washington, 466 U.S. 668 (1984)." Id.

To demonstrate that a claim has "some merit," a petitioner must "show that reasonable jurists could debate whether (or, for that matter, agree that) . . . the issues presented were adequate to deserve further encouragement to proceed further." Miller-El, 537 U.S. at 336 (internal citation, quotation marks, and alteration omitted). This is a threshold inquiry that "does not require full consideration of the factual or legal bases adduced in support of the claims." Id. at 327, 336. In addition to demonstrating that the claim has "some merit," Petitioner must also show that state post-conviction counsel was ineffective under the standards of Strickland v. Washington to excuse the procedural default of the underlying claim. Martinez, 132 S. Ct. at 1318. In order to prove ineffective assistance of counsel under Strickland v. Washington, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 687-88. A petitioner must also show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. These are referred to as the "performance" and "prejudice" prongs, respectively. See Bey v. Superintendent Greene SCI, 856 F.3d 2300. 238 (3d Cir. 2017).

The Third Circuit Court of Appeals recently adopted the following rule with respect to Martinez. If a petitioner can show "that his underlying ineffective-assistance-of-trial-counsel claim has some merit and that his state post-conviction counsel's performance fell below an objective standard of reasonableness, [then] he has shown sufficient prejudice from counsel's ineffective assistance that his procedural default must be excused under Martinez." Workman v.

Superintendent Albion SCI, -- F.3d --, 2018 WL 5987138, at *7 (3d Cir. Nov. 15, 2018). However, as this Court has stated, "Martinez v. Ryan does not allow habeas petitioners who fail to make a claim until the federal habeas stage to obtain an evidentiary hearing and a *de novo* evaluation of the claim on the mere assertion that PCRA counsel was ineffective." Boggs v. Rozum, No. 3:14-cv-34, 2017 WL 1184062, at *9 (W.D. Pa. Jan. 5, 2017).

**D.    Discussion**

Petitioner raises the following three claims in his Petition:  (1) denial of his right to confront his accusers by the admission of an autopsy report, ballistics evidence, and the limitation of cross-examination of a prosecution witness; (2) the trial court improperly shifted the burden of proof onto Petitioner to prove that he acted in self-defense; and (3) ineffective assistance of counsel.

**1.    Claim one:  Violations of the Confrontation Clause**

Petitioner first claims that he was denied the right to confront his accusers, as guaranteed under the Confrontation Clause, due to the admission of the victim's autopsy report, admission of ballistics/firearms evidence, and the limited cross-examination of a key prosecution witness. (ECF No. 1, p.5.)

As to Petitioner's claims relating to the admission of ballistic/firearms evidence and the limited cross-examination of a key prosecution witness, neither of these alleged violations of the Confrontation Clause were raised in state court and are therefore unexhausted.  In his Petition, Petitioner states that the cause of the procedural default of these claims is due to prior counsel's ineffectiveness.  (ECF No. 1, p.5.)

Notwithstanding the fact that Petitioner cannot overcome the procedural default of these claims by a general and conclusory claim of ineffective assistance of counsel, Petitioner's claims

12

are woefully insufficient and underdeveloped.  For example, he fails to specify what

ballistics/firearms evidence he is referring to and the name of the "key prosecution witness"

whose limited cross-examination he claims violated his rights.  In fact, he provides no details

whatsoever as to how he believes his right to confront his accusers was violated.  Petitioner

submitted his Petition on the standard form, and in the section of the form where he was asked to

provide factual support for this claim, Petitioner wrote:  "2. The Clause was violated when

ballistics/firearms evidence was introduced as in instance one.[2]  3. The trial court limited the

cross examination of a key prosecution witness."  (ECF No. 1, p.5.)

In <u>Mayle v. Felix</u>, 545 U.S. 644, 649 (2005), the United States Supreme Court explained

that specificity is required in a habeas petition.

> In ordinary civil proceedings, the governing Rule, Rule 8 of the Federal Rules of
> Civil Procedure, requires only "a short and plain statement of the claim showing
> that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).  Rule 2(c) of
> the Rules Governing Habeas Corpus Cases requires a more detailed statement.
> The habeas rule instructs the petitioner to "specify all the grounds for relief
> available to [him]" and to "state the facts supporting each ground."

Quoting the Advisory Committee's Note on Rule 4 of the Rules Governing Section 2254 Cases,

the Supreme Court observed:  "Notice pleading is not sufficient, for the petition is expected to

*state facts that point to a real possibility of constitutional error*."  <u>Id</u>. at 655 (emphasis added).

---

[2] The Court assumes that the phrase "as in instance once" refers to part one of this claim and that
Petitioner's complaint may be about how or through whom certain ballistics/firearms evidence
was introduced at trial.  After scouring the record, the only complaint the Court could find as to
this evidence is in a Motion for Leave to Expand the Record that Petitioner filed on September
20, 2018.  (ECF No. 16.)  In this Motion, Petitioner stated that Deborah Chaklos, an expert in the
field of firearms, testified at trial but "[s]he was not the initial scientist to possess [the gun, live
rounds, and spent casings entered into evidence] in the chain of custody or to test on these items
(that person was Dr. Robert Levine)."  (ECF No. 16, p.2.)  To the extent Petitioner complains
that this violated the Confrontation Clause, that issue will be addressed on page 21, *infra*.

Merely asserting legal conclusions does not fulfill the requirements of Rule 2(c) of the Rules

Governing Section 2254 Cases.

Petitioner's claims regarding the introduction of ballistics/firearms evidence and the

limited cross-examination of a key prosecution witness are not sufficiently detailed to state a

claim in a federal habeas proceeding.  As such, they must be denied.

As for Petitioner's claim relating to the introduction of the victim's autopsy report,[3] the

issue was addressed in a footnote by the Superior Court on appeal from the dismissal of

Petitioner's PCRA petition:[4]

> . . . [A]ppellant suggested a possible Confrontation Clause violation
> because the forensic pathologist that testified at trial, Dr. Shakir, was not the
> pathologist who conducted the autopsy and prepared the autopsy report, which
> was a Dr. Ladham.  We see no error or issues here.  Dr. Ladham's report was not
> entered into evidence and although Dr. Shakir testified that he had reviewed that
> report, Dr. Shakir largely testified as to his own evaluations and conclusions,
> rather than those of Dr. Ladham.  Furthermore, there was no issue at trial
> questioning either the injuries to the victim or the manner of the victim's death.
> Finally, appellant's counsel actually relied upon Dr. Shakir's testimony to support
> a defense theory that the victim was killed during a struggle over the gun.

(Resp't Ex. 16, Memorandum 1/29/15; ECF No. 7-5, p.50) (internal citation omitted).

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal

prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against

him."  U.S. CONST. amend. VI.  The Confrontation Clause's primary object is testimonial

hearsay, and the Framers of the Constitution "would not have allowed admission of testimonial

statements of a witness who did not appear at trial unless he was unavailable to testify and the

---

[3] Despite Petitioner's assertion otherwise, the autopsy report was not admitted into evidence at
trial.

[4] The Superior Court acknowledged that Petitioner raised this specific issue in a letter to his
PCRA counsel, Attorney Hoffman, dated June 8, 2012.  (Resp't Ex. 12; ECF No. 7-4, p.35.)

defendant had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36 (2004).

Petitioner contends that the admission of the victim's autopsy report violated his right to confront his accusers because it was authored by Dr. Laham who did not testify at trial.[5] Although he does not cite to any case law to support his claim, the United States Supreme Court has addressed questions concerning the legality of forensic tests or expert testimony pertaining to forensic tests under the Confrontation Clause in several recent decision, including Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009). In Melendez-Diaz, the offending "testimonies" were certificates sworn to before a notary public that reported the results of forensic analysis which showed material seized from the defendant was cocaine. No chemist was called to testify, and the defendant objected to the admission of the certificates claiming that the Supreme Court's decision in Crawford required the lab analysts to testify in person. The Supreme Court held that, because the analysts' certificates were testimonial statements,[6] and the analysts were "witnesses" for purposes of the Sixth Amendment, that admitting the certificates without an opportunity for cross-examination of the analysts, unless the analysts were unavailable for trial and the defendant had a prior opportunity to cross-examine them, was error.

In Bullcoming v. New Mexico, 564 U.S. 647 (2011), decided two years after Melendez-Diaz, the Supreme Court reviewed the admissibility of a BAC report authored and signed by a non-testifying analyst. The report was introduced at trial for the substantive purpose of proving

_____

[5] According to the trial transcript, Dr. Ladham had moved to Canada prior to Petitioner's trial. (TT at 179.)

[6] The Court held that the certificates were testimonial in nature because they were "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.'" Id. at 310-11 (quoting Davis v. Washington, 457 U.S. 813, 830 (2006)).

the truth of the matter asserted by its out-of-court author, namely, that the defendant had a BAC level of 0.21, which was the central question at defendant's trial, and was dispositive of his guilt. The issue before the Court was "whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification – made for the purpose of proving a particular fact – through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification." Id. at 652. The Court rule that the Confrontation Clause precludes such practice, holding "the Clause does not tolerate dispensing with confrontation simply because the court believes that questioning one witness about another's testimonial statements provides a fair enough opportunity for cross-examination." Id. at 662.

Shortly after Bullcoming, the Supreme Court decided Williams v. Illinois, 567 US. 50 (2012), a divided opinion that involved a rape prosecution in which an expert testified she obtained a DNA profile report from an independent lab based on a semen specimen taken from a vaginal swab of the victim. The lab report was not introduced into evidence, but the expert testified she compared the DNA profile contained in the lab report to the defendant's recorded DNA profile and concluded it was a match. The defendant challenged the expert's testimony which relied upon the lab report on the basis the report's admission without testimony from its author violated the Confrontation Clause. The plurality opinion relied in part on Federal Rule of Evidence 703 and held, "[o]ut-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause." Id. at 58. Alternatively, they applied the primary purpose test to conclude the underlying lab report was itself non-testimonial, and thus beyond the reach of the Confrontation Clause, because the report did not identify the

defendant, was not inherently inculpatory, and was created "before any suspect was identified." Id. The report "was sought not for the purpose of obtaining evidence to be used against petitioner, who was not even under suspicion at the time, but for the purpose of finding a rapist who was on the loose." Id. The plurality thus opined the lab report differed from the certificates of analysis and BASC reports in Melendez-Diaz and Bullcoming, which were created for the sole purpose of providing evidence against a particular defendant and were used to establish the truth of the matter asserted.[7]

In Commonwealth v. Brown, 185 A.3d 316 (Pa. 2018), the Pennsylvania Supreme Court considered whether a challenged autopsy report – presented without accompanying testimony by its author – was testimonial in nature such that the defendant's Sixth Amendment right to confront the witnesses against him was violated by its admission at trial. Noting that other jurisdictions hold autopsy reports are non-testimonial because they are not created primarily for presentation in a criminal trial, the Pennsylvania Supreme Court pointed out that "Pennsylvania law requires the preparation of autopsy reports in all cases of sudden, violent, and suspicious deaths, or deaths by other than natural causes, and in such cases, the autopsy and subsequent reports are designed to determine whether the death occurred as the result of a criminal act." Id. at 329 (citing 35 P.S. § 450.503, 16 P.S. § 1237). Therefore, the court determined that "the primary purpose for preparation of an autopsy report under these circumstances is to establish or prove past events potentially relevant to a later criminal prosecution and that any person creating the report would reasonably believe it would be available for use at a later criminal trial." Id. It found that the autopsy in that case was testimonial in nature and could be introduced into

---

[7] Although the plurality concluded that the DNA profile report from the independent lab was not testimonial, they could not agree about why the report was not testimonial.

evidence without the accompanying testimony of the author only if he/she was unavailable and the defendant had a prior opportunity to cross-examine him/her.  Id.  Nevertheless, it ultimately concluded that the admission of the autopsy report was harmless error because it was "merely cumulative of [the testifying expert forensic pathologist's] independent opinion regarding the cause of death which was properly admissible."  Id. at 330.

Returning to instant case, this Court must first determine whether and to what extent Melendez-Diaz applies to Petitioner's case.  Melendez-Diaz was issued three months after Petitioner's judgment of sentence became final on direct review, and the case has been deemed to apply retroactively only to cases pending final review on direct appeal at the time is was decided.  See Briscoe v. Virginia, 559 U.S. 32 (2010) (vacating and remanding for further proceedings not inconsistent with Melendez-Diaz); see also Commonwealth v. Barton-Martin, 5 A.3d 363, 369 (Pa. Super. 2010) ("given that the Supreme Court has instructed the Commonwealth of Virginia to apply Melendez-Diaz retroactively, we see no reason to apply a different rule here.").  Therefore, Petitioner, whose state court conviction was already final, was not entitled to the benefit of Melendez-Diaz at the time is was issued.  For purposes of the AEDPA, however, the analysis is slightly more complicated.

State court decisions under AEDPA are measured against the Supreme Court's precedents that exist as of "the time of the relevant state-court decision."  Lockyer v. Andrade, 538 U.S. 63, 71 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)).  The relevant state court decision at issue here is the Pennsylvania Superior Court's Memorandum dated January 29, 2015.  See, supra.  On that date, however, Melendez-Diaz was found to apply only to those cases that were pending on direct review at the time it was decided and there was no

"clearly established Federal law" that held otherwise – *i.e.*, applying it retroactively to cases on collateral review.

Since Melendez-Diaz was decided in 2009, courts have differed in interpreting whether the holding amounts to a "new rule," or is merely an extension of Crawford. *See* Walker v. Johnson, 2011 WL 2119260, at *4 (E.D. Va. Apr. 19, 2011) (citing cases).[8]  However, even assuming, without deciding, that Melendez-Diaz announced a new rule, it would not apply retroactively on collateral review.  To apply retroactively on collateral review, a new rule must forbid criminal punishment of certain individual acts – a standard that does not apply to Petitioner – or the rule must be a "watershed" rule of criminal procedure.  Teague v. Lane, 489 U.S. 288, 311 (1989).  In Whorton v. Bockting, 549 U.S. 406, 418-21 (2007), the United States Supreme Court found that the Confrontation Clause rule announced in Crawford did not qualify as a watershed rule because even though it "resulted in some net improvement in the accuracy of fact finding in criminal cases," that improvement was not significant enough to amount to a watershed rule.  Id.  Given that Crawford did not meet the watershed rule standard, it is highly unlikely that the Supreme Court would find the opposite with respect to Melendez-Diaz.

The "clearly established Federal law" that was applicable to Petitioner's claim at the time the Pennsylvania Superior Court affirmed the denial of his PCRA petition on January 29, 2015, was Crawford, which contained no holding that supports Petitioner's claim.  In Crawford, the Supreme Court specifically left "for another day any effort to spell out a comprehensive

---

[8] In Frankenberry v. Coleman, 2009 WL 3734140, at *5 (W.D. Pa. Nov. 6, 2009), District Judge Nora Barry Fischer of this Court adopted a Report and Recommendation authored by the late Magistrate Judge Amy Reynolds Hay wherein she stated that "just as Crawford does not apply retroactively to cases on collateral review, the asserted expansion of Crawford in Melendez-Diaz cannot apply retroactively to cases on collateral review."

definition of 'testimonial,'" and acknowledged that "our refusal to articulate a comprehensive definition in this case will cause interim uncertainty." 541 U.S. at 68, n.10. When the Supreme Court itself acknowledges that an issue has not been resolved and is fairly debatable, there is no argument left that the state court's decision is contrary to or an unreasonable application of "clearly established" Supreme Court precedent. Put differently, Crawford did not clearly establish the answer to the question.

Finally, it is worth noting that the victim's autopsy report in this case was never introduced into evidence, a fact that distinguishes this case from Melendez-Diaz and Bullcoming and which was an important factor in the Court's Confrontation Clause analysis. Moreover, the expert opinion testimony of Dr. Shakir was arguably permitted pursuant to Pennsylvania Rules of Evidence 703 and 705. See Brown, 185 A.3d at 331 ("had the autopsy report **not** been introduced into evidence at trial, Pa.R.E. 703 and 705 would arguably permit precisely the type of expert opinion testimony given by Dr. Chu, which was based in part on the otherwise inadmissible facts and data contained in the report upon which experts in the field of forensic pathology would reasonably rely in forming an opinion.") Dr. Shakir was accepted at trial as an expert forensic pathologist upon stipulation of the parties. Dr. Shakir testified that in preparing for the case, he reviewed both the autopsy report prepared by Dr. Laham as well as diagrams and a series of photographs taken during the examination. He also utilized a Styrofoam head as an exhibit to indicate where the bullets entered the victim's head. During his examination, Dr. Shakir was shown properly admitted autopsy photographs and questioned as to each of the gunshot wounds on the victim. He testified as to the internal damage to the victim's body caused by the bullets and the effect each gunshot wound would have on a human being, and he based this testimony on his own training and experience. He did not simply read Dr. Ladham's autopsy

report into the record, and, in fact, referred to it only twice, which occurred during the defense's cross-examination – when asked what he believed to be the trajectory of the bullet that struck the victim's arm and whether there was any evidence of soot in or around the gunshot wound to the victim's chin. At the conclusion of his testimony, he offered his independent opinion as to the cause and manner of death. Thus, even had the autopsy report been admitted into evidence without Dr. Ladham's testimony, it is likely that such a violation would have amounted only to harmless error. *See* <u>Brown</u>, 185 A.3d at 330-33.

Lastly, the Court will backtrack to address Petitioner's claim regarding ballistics/firearms evidence introduced through the testimony of Deborah Chaklos that was discussed in footnote 2 of this Memorandum Opinion. Deborah Chaklos was accepted at trial as an expert in her field, which was firearms. She testified that she examined the Helwan pistol and the six shell casings that were found at the crime scene as well as the one spent bullet that was removed from the victim's body. She concluded that the spent bullet removed from the victim and four of the casings found at the scene had all been discharged from the Helwan pistol and that the two remaining casings were discharged from a second 9-millimeter-caliber pistol. As it pertained to the operation on the gun when it was received by Chaklos, she testified that the magazine would not stay in and that she could not test fire it unless she held it down into the pistol. However, the parties stipulated that the gun was operating properly on the day that it was used and that something happened to the magazine during its examination at the Crime Lab before it reached Chaklos. (TT at 236-46.)

Petitioner conclusively, and without any factual support, alleges a violation of the Confrontation Clause, but the Court is left to speculate as to how Petitioner believes it was violated. Based on what he stated in his previously filed Motion that was addressed in footnote

2, it appears that, according to Petitioner, Chaklos' testimony regarding the ballistics and firearms evidence should not have been admissible because she was not the first person in the chain of custody to receive the firearm.

Relevant here is Justice Thomas' concurring opinion in <u>Melendez-Diaz</u>, wherein he wrote that

> [t]he Confrontation Clause addresses who must testify. It simply does not follow, however, that this clause, in lieu of the other rules set forth above, controls who the prosecution must call on every issue. Suppose, for instance, that the defense challenges the procedures for a secure chain of custody for evidence sent to a lab and then returned to the police. The defense has the right to call its own witnesses to show that the chain of custody is not secure. But that does not mean it can demand that, in the prosecution's case in chief, each person who is in the chain of custody – and who had an undoubted opportunity to taint or tamper with the evidence – must be called by the prosecution under the Confrontation Clause. And the same is true with lab technicians.
>
> The Confrontation Clause is simply not needed for these matters. Where, as here, the defendant does not even dispute the accuracy of the analyst's work, confrontation adds nothing.

557 U.S. at 340. <u>Melendez-Diaz</u> did not hold "that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." 557 U.S. at 311, n.1. Instead, "gaps in the chain go to weight of the evidence, not its admissibility[.]" <u>United States v. Rawlins</u>, 606 F.3d 73, 83 (3d Cir. 2010) (citing <u>Melendez-Diaz</u>, 557 U.S. 311, n.1.). Only when gaps render a chain of custody so deficient is exclusion required. <u>Id</u>. at 82 (citing <u>United States v. Mejia</u>, 597 F.3d 1329, 1336 (D.C.Cir. 2010)).

In this case, the parties stipulated that the chain of custody of all the Commonwealth exhibits was uninterrupted from the point where they were recovered at the crime scene until they were examined in the Crime Lab. (TT at 177-78.) The parties also stipulated as to each of

the lab reports, including that of Wayne Reutzel who examined the gun with the clip and found one latent fingerprint of value on the inner layer of the black electrical tape wrapped around its handle (TT at 181) and that of Tom Meyers who swabbed the pistol and clip for DNA analysis (TT at 182-83). Chaklos testified about evidence that she personally examined and tested and the defense had the opportunity to, and did, cross-examine her as to her findings and conclusions. No Confrontation Clause violation occurred with respect to her testimony, and, to the extent Petitioner's complaint is a challenge to the chain-of-custody of the firearms evidence introduced in his case, such claim is not a confrontation issue but rather goes to the weight to be afforded to Chaklos' testimony. For the aforementioned reasons, claim one is denied.

## 2. **Claim two: Burden-shifting**

Petitioner alleges that the trial court improperly shifted the burden of proof onto the defense at trial to prove that Petitioner acted in self-defense. (ECF No. 1, p.7.) He claims that the trial court "drew several presumptions (inferences [that had] no connection to the facts of record" and this placed him in a position to either "rebut those erroneous findings of fact" or "face a finding of guilt based on conjecture." (ECF No. 1, p.7.) Petitioner acknowledges that this claim is unexhausted but asserts that it is procedurally defaulted due to the ineffectiveness of direct appeal counsel. (ECF No. 1, p.7.)

As with claim one, Petitioner fails to provide any factual support for this claim, such as what presumptions the trial court allegedly made that shifted the burden of proof and what constitutional rights were violated. He also conclusively asserts that the claim is unexhausted and procedurally defaulted due to the ineffectiveness of his direct appeal counsel, but he again fails to provide factual and legal support for why he believes this default should be excused pursuant to Martinez. Bald assertions and conclusory allegations like this one, without

supporting a claim of a constitutional violation, do not provide sufficient grounds for finding

cause to excuse the procedural default of a claim.[9] *See* Mayle, 545 U.S. at 649.

Nevertheless, Petitioner's claim is without merit. On direct appeal of his judgment of

sentence, Petitioner argued that the Commonwealth failed to sustain its burden of proving that he

did not act in self-defense. After reviewing, in detail, the facts pertaining to Petitioner's claim,

the Superior Court found that the Commonwealth satisfied its burden of disproving, beyond a

reasonable doubt, Petitioner's claim of self-defense.

> The evidence presented, including ballistics evidence, established that the only
> gun at the scene of the shooting was appellant's, and he fired that gun not once,
> but repeatedly. On that basis, we find appellant's actions were excessive, and his
> claim of self-defense was disproved.

(Resp't Ex. 6, ECF No. 7-3, at p.10.) Moreover, Petitioner proceeded to trial before a judge, not

a jury, which eliminated any chance for a juror to have mistakenly concluded that it was not

necessary for the prosecution to prove the absence of self-defense beyond a reasonable doubt and

that the defendant bore the burden of proving the justification of self-defense instead. Federal

courts presume that a judge, as the trier of fact, "can readily identify credible evidence, give

proper weight to the evidence, and understand what law is relevant to his or her deliberations."

Hill v. Anderson, 881 F.3d 483, 510 (6th Cir. 2018) (internal citations omitted). Petitioner has

not only failed to specify in what ways he believes the self-defense burden was shifted, but he

has also failed to show how the judge who tried his case was incapable of understanding and

applying the appropriate law to the facts of his case. For these reasons, this claim is denied.

---

[9] Moreover, Petitioner reads Martinez too broadly, thinking that it permits claims of ineffective assistance of any counsel to serve as cause to excuse all claims that were procedurally defaulted in state court. Martinez, however, is limited to excusing procedurally defaulted claims of trial counsel's ineffectiveness, which were procedurally defaulted as a result of PCRA counsel's ineffectiveness in the initial PCRA proceeding. Since the default at issue here is attributed to direct appeal counsel's ineffectiveness, Martinez is inapplicable.

### 3. Claim three: Ineffective assistance of counsel

In his final claim, Petitioner alleges that his attorneys were ineffective at all stages of his criminal proceedings. While he fails to specify in what ways he believes his appellate and post-conviction counsels were ineffective, he claims that his trial counsel "failed to make timely objections to the introduction of inadmissible evidence, conduct meaningful cross-examinations of key witnesses, present readily available exculpatory evidence," and "investigate, prepare and familiarize himself with the facts of Petitioner's case before trial." (ECF No. 1, p.8.) Petitioner acknowledges that these issues were not exhausted but he claims that this was due to the ineffectiveness of his appointed PCRA counsel, Attorney Hoffman, who was granted permission to withdraw after filing a *Turner/Finley* no-merit letter. (ECF No. 1, p.9.)

Although Petitioner places blame on his PCRA counsel for his failure to raise the aforementioned ineffective assistance of trial counsel claims in an amended PCRA petition filed on his behalf, Petitioner does not provide sufficient factual support for finding cause under Martinez to excuse the procedural default of these claims. *See* Mayle, 545 U.S. at 649. Moreover, in ruling on his PCRA appeal, the Superior Court acknowledged that Attorney Hoffman's no-merit letter "thoroughly raised and explored the possibilities of ineffective assistance on the part of prior counsel" and there was "no merit to this contention[.]" (Resp't Ex. 16, Memorandum 01/29/15; ECF No. 7-5, p.51.) The Superior Court also considered Petitioner's claim that Attorney Hoffman was ineffective for failing to file an amended PCRA petition on his behalf and again found no merit. Id.

Petitioner's dissatisfaction with Attorney Hoffman simply for filing a no-merit letter and requesting permission to withdraw does not amount to deficient performance in and of itself. In fact, district courts within Pennsylvania have found that appointed PCRA counsel was not

deficient under similar, if not identical facts. *See* <u>Bibbs v. Glunt</u>, 2016 WL 5539758, at *8 (E.D. Pa. April 13, 2016) (collecting cases). For example, the district court in <u>Edwards v. Walsh</u>, 2013 WL 4457365 (E.D. Pa. Aug. 21, 2013), found that the petitioner's claims raised in his federal habeas petition were procedurally defaulted because the petitioner failed to exhaust the claims and could no longer do so. <u>Id</u>. at *4. The petitioner alleged that his appointed PCRA counsel was ineffective for filing a no-merit letter and requesting to withdraw as counsel. <u>Id</u>. at *1, n.1. The district court analyzed whether PCRA counsel's performance was sufficiently deficient to excuse the default of the petitioner's claims. <u>Id</u>. The court acknowledged that PCRA counsel did not raise the defaulted claims but noted that counsel filed a brief discussing the viability of the claims that the petitioner raised in his *pro se* PCRA petition and determined that there were no meritorious issues. <u>Id</u>. It stated that the "state court agreed to allow withdrawal, but only after conducting the requisite inquiries, that is, the state court was required to 'conduct an independent review of the record and must agree with counsel that the petition is meritless before dismissing the petition.'" <u>Id</u>. The court then concluded that "[s]uch conduct on the part of [the p]etitioner's PCRA counsel does not indicate deficient performance under <u>Strickland</u>" and therefore could not establish cause for the procedural default of the petitioner's habeas claims under <u>Martinez [v. Ryan</u>, 132 S. Ct. 1309 (2012) ]. <u>Id</u>.

Finally, even if this Court were to find sufficient cause to excuse the default of the ineffective assistance of trial counsel claims at issue, the claims are not specific enough for the Court to review. Petitioner states that his trial counsel failed to object to the introduction of inadmissible evidence, but he does not identify the evidence. He claims that counsel did not conduct meaningful cross-examination of key witnesses, but he fails to identify the witnesses counsel was deficient in examining. He claims that counsel did not present available exculpatory

evidence but does not identify the evidence to which he is referring. Lastly, he claims that counsel failed to investigate and prepare for trial but does not identify in what ways. Federal habeas review of state court judgments in particular does not permit the making of bare conclusory statements. A petitioner must state specific facts, cite to places in the record, or describe the nonrecord facts that "point to a real possibility of constitutional error." *See* Mayle, 545 U.S. at 655-56. In other words, Petitioner cannot simply write that his trial counsel was ineffective and expect a plenary exploration of counsel's stewardship. He must credibly allege facts explaining how his trial counsel was ineffective and show that success on those claims or defenses would likely have resulted in a different outcome at trial. Petitioner does none of this. For those reasons, the claim must be denied.

### 4. Certificate of Appealability

A court should issue a certificate of appealability where a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner meets this burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). A certificate of appealability should be denied in this case because jurists of reason would not disagree with the Court's resolution of Petitioner's claims or conclude that they are "adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack, 529 U.S. at 484). A separate Order will issue.

Dated: February 4, 2019.

_____

Lisa Pupo Lenihan
United States Magistrate Judge

27

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTOPHER SYMMS, | ) | Civil Action No. 15 – 1384 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| SUPERINTENDENT TREVOR | ) | |
| WINGARD and THE ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| PENNSYLVANIA, | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER

**AND NOW**, this 4th day of February, 2019;

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus (ECF No. 1) is

denied.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is denied.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment in favor of

Respondents and mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules

of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by

Rule 3 of the Federal Rules of Appellate Procedure.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

Cc:     Christopher Symms
        HD-3335
        1600 Walter Mills Road
        Somerset, PA  15510

        Counsel of record
        (Via CM/ECF electronic mail)